UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
HIRAM MONSERRATE,

                    Plaintiff,

                                                    **COMPLAINT**

          v.

BOARD OF ELECTIONS IN THE CITY OF          Civil Action No.   21-CV-3830
NEW YORK, COMMISSIONERS OF THE
BOARD OF ELECTIONS IN THE CITY OF
NEW YORK, NEW YORK CITY CAMPAIGN
FINANCE BOARD, and CITY OF NEW YORK,

                    Defendants.
-------------------------------------------------------X

          Plaintiff, HIRAM MONSERRATE, by and through his attorneys, AVALLONE &

BELLISTRI, LLP, alleges as follows:

                        **INTRODUCTION**

          1.        This is an emergency complaint seeking relief under Federal Rule of Civil

Procedure 65(b).

          2.        By bringing this action, Plaintiff Hiram Monserrate challenges the enactment of

Local Law No. 15 of 2021 by the New York City Council and its application against Plaintiff by

Defendants Board of Elections in New York City and the New York City Campaign Finance

Board. Local Law No. 15 restricts returning citizens, i.e., those individuals previously convicted

of certain felonies, served their time, completed their supervised release and now seek to work

for residents of their community, from running for city office, including Plaintiff Hiram

Monserrate

          3.        Plaintiff contends that the legislation enacted was unconstitutional on its face,

both under the Federal and the State Constitutions, as it violates the fundamental rights of both

him and his supporters, including First and Fourteenth Amendment Constitutional rights, the rights of free speech and political association, due process, equal protection, and the fundamental right of voters to vote for the candidate of their choice in the now-altered primary election.

4.      Plaintiff Monserrate brings this action seeking emergency injunctive relief and a temporary restraining order due to the fact that he has been removed from the primary ballot by Defendant Board of Elections in the City of New York for an election that is less than two months away (June 22, 2021)[1]; upon information and belief, absentee ballots are currently being printed and scheduled to be mailed out to voters on May 7, 2021 (seven days from this filing); and additionally, Plaintiff Monserrate has been and continues to be damaged due to Defendant New York City Campaign Finance Board's continued refusal to disburse matching funds but for the unconstitutional enactment and enforcement of Local Law No. 15 of 2021.

5.      Accordingly, this action is brought on an emergency basis under FRCP 65, and seeks to enjoin infringement of Plaintiffs fundamental rights.

## NATURE OF THE PROCEEDING

6.      This is an action brought pursuant to this Court's original subject matter jurisdiction over 28 U.S.C. § 1331 (federal question), § 1343(a)(3) (equal rights) and § 1343(a)(3) (right to vote) and title 42 U.S.C. §1983 and 1988 and New York State law alleging civil rights and constitutional violations of First Amendment; the equal protection of the 14th Amendment and the corresponding fundamental state right to ballot access committed by the City of New York and individuals employed by the New York City Campaign Finance and the City of New York Board of Elections.

---

[1] Plaintiff is prepared to submit to an expedited discovery schedule since time is of the essence, and without a temporary restraining order, absentee ballots are scheduled to be sent out without Plaintiff Monserrate appearing on the ballots

7.      Plaintiffs seek recovery of actual and other damages as well as declaratory, injunctive, and equitable relief challenging the unconstitutional infringement by New York City Local Law No. 15 (as amended 2021) on Plaintiff's and his supporters' fundamental right to vote for a candidate of their choosing, and the corresponding right of an individual Plaintiff candidate to run for public office.

8.      At no time in the history of the State of New York or the United States of America have the rules of an election been changed midstream and applied to target and remove a publicly declared candidate, Hiram Monserrate, from running for public office. It is respectfully submitted that this Court should not be the first to upend an election in such a way.

## PARTIES

9.      Plaintiff Hiram Monserrate is the current Democratic Leader of the 35th Assembly District in Queens, New York, and a declared Democratic Candidate for Member of the City Council in the 21st District, Queens County. Plaintiff Monserrate is a candidate within the meaning of § 16-102 of the Election Law of the State of New York and aggrieved by Defendants Board of Elections' April 14, 2021 adverse determination to remove Plaintiff Monserrate from the ballot and New York City Campaign Finance Board's denial of matching funds, based solely on Chapter 50-A § 1139 of the New York City Charter as amended 2021 (also known as Local Law No. 15).

10.     Defendants Board of Elections in the City of New York and Commissioners of the Board of Elections in the City of New York, as provided under § 3-200 of the New York State Election Law, are responsible to prepare the ballots for Primary, Special and General Elections to the extent that all vacancies for public office and party positions may be filled; to conduct fair and honest elections; to enfranchise all eligible New Yorkers to register to vote and

to conduct elections, certify the canvass and to retain the official records.

11.    Defendant New York City Campaign Finance Board is an independent New York City agency that serves to provide campaign finance information and public funding to citizens running for office in the City of New York.

12.    Defendant City of New York is a municipal corporation organized and existing under, and by virtue of, the laws of the State of New York and whose legislative body is the New York City Council.

## JURISDICTION AND VENUE

13.    This Court has original subject matter jurisdiction over 28 U.S.C. § 1331 (federal question), § 1343(a)(3) (equal rights), § 1343(a)(3) (right to vote) and title 42 U.S.C. §§ 1983 and 1988.

14.    This action is also brought pursuant to 28 USC § 2201 under which the Court may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such. In addition, the action is brought pursuant to 28 USC § 2202 which allows further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

15.    Further, Plaintiff notes that Defendant Board of Elections in the City of New York previously and explicitly argued in both federal and state court that claims brought under 42 U.S.C. § 1983 cannot be raised in state court. As such, this action is properly brought in federal court.

16.    Venue is proper in this District pursuant to 28 U.S.C. § 1391, as Defendants' primary place of business lies in the Southern District of New York.

17.    Plaintiff Monserrate has standing to bring this Complaint because he has been and continues to be adversely affected by Local Law No. 15 of 2021.

18.    The claims presented by Plaintiff are ripe for adjudication because Plaintiff is presently, gravely and adversely affected by the Defendants' actions of excluding him from the Democratic primary ballot, as previously stated.

19.    This action is brought at this time because the absentee ballots for the Democratic primary election to be held on June 22, 2021, are to be sent out to voters (including Plaintiff's supporters) on or about May 7, 2021. Plaintiff's appeal of the state court decision, decided on April 26, 2021, denying Plaintiff's petition to be placed on the ballot will not be heard by the Appellate Division, Second Department, until May 12, 2021[2], which is after the date that printed absentee ballots are to be sent out to voters (May 7, 2021). As such, Plaintiff will be irreparably harmed should this court not entertain the request for an injunction.

20.    This Court has personal jurisdiction over Defendants at least because, upon information and belief, these Defendants respectively in their official capacities have ongoing and systematic contacts with this District, have and maintain offices in this District, and have committed wrongful acts which both occurred within this District, and which have had an impact or effect in this District.

21.    Venue is proper under 28 USC § 1391(b) in the United States District Court for the Southern District of New York because as a substantial part of the acts or omissions giving rise to Plaintiff's claims have occurred in this District.

---

[2] Pursuant to Administrative Order 2021-0310.1, available at
http://www.nycourts.gov/courts/ad2/pdf/Administrative%20Order%202021-0310.1.pdf (accessed April 28, 2021).

22.     Venue is further proper within the Southern District of New York because Defendants transact business in the District, and the injuries have taken place in the Southern District.

## FACTUAL ALLEGATIONS

23.     On February 11, 2021, New York City Council passed Int. #374, which later became known as Local Law No. 15. This legislation sought to provide that a person convicted of certain felonies is not eligible to be elected to city office.

24.     The legislation was signed into law on February 25, 2021 by Mayor Bill de Blasio amending the New York City Charter to specifically "disqualify any person that has been convicted of certain felonies, in relation to public corruption and depriving the public of honest services, from holding the office of Mayor, Public Advocate, Comptroller, Borough President or Council Member."

25.     Local Law No. 15 has infringed on the rights of Plaintiff and his supporters, including the rights of freedom of speech, equal protection of the laws, and the rights for all those who were convicted of the above-named felonies, served their time, completed their supervised release and now seek to work for residents of their community ("returning citizens").

26.     Plaintiff Monserrate was first elected to elected office as the Democratic District Leader for the 34th Assembly District in 2000.

27.     In September 2001, Plaintiff Monserrate was elected as a New York City Councilman becoming the first Latino elected to elected office in Queens and representing the 21st Council District of Corona, East Elmhurst and Jackson Heights.

28.     On November 4, 2008, Plaintiff Monserrate was elected to represent the 13th District in the New York State Senate.

29.     On May 2, 2012, Plaintiff Monserrate pled guilty to mail fraud and conspiracy to commit fraud in violation of 18 USC §§ 1341 and 1349 and served 17 months in prison.

30.     Plaintiff Monserrate's allocution in 2012 did not include any warning of consequences relating to holding future public office as he had contemplated returning to public service upon his return to the community. In fact, Plaintiff went on to run four separate times as a returning citizen prior to his current candidacy for City Council District 21 in 2021.

31.     After paying his debt to society, Plaintiff Monserrate first sought election as a returning citizen in September 2016 by running for Democratic District Leader without any objection by Defendants.

32.     In 2017, Plaintiff Monserrate was permitted by Defendants to run for a position on the City Council representing the 21st District and received matching funds in the amount of over $100,000.00 with their full knowledge that Plaintiff Monserrate was a returning citizen, without any objections to Plaintiff's being on the ballot by Defendants.

33.     On January 31, 2018, Councilmember Francisco Moya along with his colleague, Councilmember Ritchie Torres, introduced Int. #374 which would bar, *in perpetuity*, those returning citizens previously convicted of certain felonies from running for city office. The New York City Council never held a vote or any hearing on Int. #374, at that time and until 2021, when Plaintiff Monserrate again declared his candidacy for City Council District 21, challenging the incumbent, Councilmember Francisco Moya, and after Plaintiff Monserrate had filed with the New York City Campaign Finance Board and paid his fine in the amount of $26,473.00 pursuant to NYC Admin. Code §§ 3-703(1)(d), (12), in order to run as a qualified and eligible candidate.

34.     Later in 2018, Plaintiff Monserrate was elected Democratic District Leader for the 35th Assembly District and assisted 3 other reformers run and win as Democratic district leaders

in Queens County, all while Plaintiff Monserrate was a returning citizen.

35.    In 2020, Plaintiff Monserrate ran for New York State Assembly District 35, without any objections to Plaintiff's being on the ballot by Defendants, was re-elected as Democratic District Leader for District 35 and assisted seven (7) other reformers run and win as Democratic district leaders in Queens County, despite being a returning citizen.

36.    On or about December 18, 2020, Plaintiff Monserrate filed a certification document with the New York City Campaign Finance Board identifying as a candidate for New York City Council District 21.

37.    In January 2021, Plaintiff Monserrate paid an outstanding fine pursuant to NYC Admin. Code §§ 3-703(1)(d), (12), in the amount of $26,473.00 to the New York City Campaign Finance Board in order to allow for his campaign to receive public funds for the upcoming June 22, 2021 Democratic primary election.

38.    On or about January 8, 2021, Plaintiff Monserrate and his campaign submitted a certification to Defendant New York City Campaign Finance Board to enter the matching funds program.

39.    On January 15, 2021, Plaintiff Monserrate's campaign filed disclosure statements reporting financial activity to the New York City Campaign Finance Board.

40.    On or about January 2021, just one month after Plaintiff Monserrate filed his intent to run for the 21st District City Council position and paid the statutory fine, Int. #374 coincidentally reappeared before the New York City Council after being dormant for approximately three (3) years. This bill remained the same in all substantive ways, but the sponsor of the bill had changed. In other words, the original sponsor of Int. #374 was Councilmember Francisco Moya, the incumbent against whom Plaintiff Monserrate is running

for election, and Councilmember Moya's name was removed as sponsor when Int. #374

reappeared in the New York City Council and replaced with the name of Councilmember Justin

Brannan as sponsor.

41.     The legislation resurfaced only _after_ Plaintiff Monserrate announced his campaign

and demonstrated through his supporters that he was a viable candidate in the middle of the

election cycle.

42.     On February 11, 2021, the New York City Council passed Int. #374 as Local Law

No. 15 of 2021.

43.     On February 15, 2021—even before Local Law No. 15 was ostensibly in effect—

the New York City Campaign Finance Board was scheduled to make a payment to Plaintiff

Monserrate's campaign for the 21st District. It did not do so despite the Monserrate Campaign

complying with all New York City Campaign Finance Board rules and despite Plaintiff

Monserrate's meeting all other requirements to be a viable and eligible candidate.

44.     On February 16, 2021, Defendant New York City Campaign Finance Board sent

Plaintiff's campaign a nonpayment determination based on the campaign's failure to meet the

$5,000.00 minimum threshold.

45.     On February 22, 2021, prior to the enactment of Local Law No. 15 on February

25, 2021, Plaintiff's campaign ("Hiram 21") submitted amendments to the certification for the

matching funds program to Defendant New York City Campaign Finance Board, which

corrected any and all discrepancies Defendant Campaign Finance Board had, resulting in Hiram

21 being eligible to receive matching funds.

46.     Despite the removal of the purported ineligibility status, Defendant New York

City Campaign Finance Board refused to release the matching funds to Plaintiff's campaign.

47.    On February 25, 2021, Mayor Bill de Blasio signed Local Law No. 15 into effect amending the New York City Charter and altering the rules of the election less than four months before the primary elections.

48.    Upon information and belief, there is no other candidate registered with the New York City Campaign Finance Board other than Plaintiff Monserrate to whom Local Law No. 15 has been applied.

49.    On March 5, 2021, the New York City Campaign Finance Board sent a "Notice of Ineligibility for Public Funds" to the Monserrate campaign, declaring that "Hiram Monserrate is ineligible to be elected to city office and therefore ineligible to receive public funds" pursuant to the new legislation, notwithstanding the fact that as of February 22, 2021, Plaintiff had satisfied the threshold, which Defendant New York City Campaign Finance Board initially rejected.

50.    This March 5, 2021 decision by Defendant New York City Campaign Finance Board was made only after Local Law No. 15 was enacted, despite Plaintiff Monserrate filing to run for the City Council District 21 position and taking other affirmative steps to garner electoral support and monetary contributions before the legislation was passed by the New York City Council and signed into law on February 25, 2021, despite Plaintiff Monserrate having previously run for elected office four separate times as a returning citizen, and despite Plaintiff's campaign becoming eligible as of February 22, 2021, when the campaign indisputably met the threshold for matching funds.

51.    On March 15, 2021, Plaintiff Monserrate's campaign again filed disclosure statements with the New York City Campaign Finance Board reporting financial activity.

52.    Since March 2021, Plaintiff Monserrate's campaign has gathered over 1,000 registered Democratic voters' signatures in his District, which overwhelmingly exceeds the

required 270 signatures, in the midst of a global pandemic, demonstrating the support that

Plaintiff Monserrate maintains in his community and the District.

53.     Plaintiff Monserrate's campaign has received donations from over 300

contributors to campaign funds and raised over $18,070.00 in campaign funds. Of those

donations, 280 are of $300.00 or less, and well more than half are less than $50.00.  And of those

donations, 265 were made before Local Law No. 15 was signed into effect on February 25, 2021.

54.     Under the matching funds program, up to $175 per donor is eligible for matching

at a rate of $8-to-$1.  Thus, Plaintiff Monserrate had a vested expectation that their contributions

to the Monserrate campaign would result in total matching funds of over $100,000.00.

55.     However, after approximately 150 residents contributed to Plaintiff Monserrate's

campaign and after he filed his first disclosure statement with the New York City Campaign

Finance Board demonstrating that he was a serious candidate who had raised substantial monies

and was entitled to approximately $100,000 in public matching funds, the City Council enacted

the bill that became Local Law No. 15, which Mayor de Blasio signed into law on February 25,

2021.

56.     Upon information and belief, because of Hiram Monserrate's presence in the race,

other candidates with similar political constituencies have stayed out of the race due to

Monserrate's candidacy. That is, candidates who advocate similar policies viewed the field as

occupied because of Plaintiff Monserrate's legitimate candidacy dating back to December of

2020. Not only does this limit access to the ballot by voters, Plaintiff, and other aforementioned

candidates, but it also unfairly advantages the incumbent, Councilmember Francisco Moya.

57.     On March 22, 2021, Plaintiff Monserrate filed the designating petition for the

Democratic primary election with Defendant Board of Elections in the City of New York.

58.     On March 31, 2021, Defendant Board of Elections in the City of New York received an objection to Plaintiff Monserrate's place on the June 2021 primary ballot. The citizen objector's petition was brought before New York State Supreme Court in the County of Queens (Index No. 707700/2021) and asked Defendant to remove Plaintiff Monserrate from the ballot based on Local Law No. 15 of 2021.

59.     On April 14, 2021, Defendant Board of Elections in the City of New York voted to invalidate Plaintiff Hiram Monserrate's designating petition for public office of member of the New York City Council from the 21st Council District, Queens County, in the Democratic Party primary election to be held on June 22, 2021, thus removing Plaintiff Monserrate from the ballot.

60.     On April 16, 2021, Plaintiff Hiram Monserrate filed a petition to validate his candidacy pursuant to Article 16-102 of the New York Election Law in New York State SUpreme Court, Queens County (Index No. 708837/2021) before the Hon. Timothy J. Dufficy.

61.     On April 26, 2021, the Hon. Robert I. Caloras issued a judgment stating that the petition filed by the citizen-objector was being withdrawn and the proceeding was dismissed as a result of the order/judgment issued by the Hon. Timothy J. Dufficy, dated April 23, 2021, wherein Hiram Monserrate's petition (Index No. 708837/2021) to overturn the determination of the Board of Elections in the City of New York and refusal to place Hiram Monserrate on the ballot was denied on procedural grounds in finding that the City of New York was not notified of the constitutional challenges to Local Law No. 15 pursuant to CPLR 1012(b)(2), despite the City of New York being served with a copy of Monserrate's petition at the City's official, self-designated email address for service on the same day the petition was filed.[3] The court declined

---

[3] Plaintiff/Petitioner Monserrate's appeal is in the process of being filed with the Appellate Division, Second Department, on or before May 3, 2021.

to entertain the constitutional issues.[4]

62.     Upon information and belief, Plaintiff Monserrate is a candidate within the meaning of Article 16-102 of the Election Law of the State of New York and aggrieved by Defendants Board of Elections in the New York City's adverse determination to remove Plaintiff Monserrate from the ballot and New York City Campaign Finance Board's refusal to issue matching funds, based solely on unlawful Local Law No.15 as the ground for disqualification

63.     Without matching funds from Defendant New York City Campaign Finance Board, Plaintiff Monserrate will be damaged in that his campaign is and will continue to be adversely affected, and the voters who support candidate Monserrate will have their voices silenced as the candidate will be unable to properly finance his campaign. Further, Defendant New York City Board of Elections has determined that Plaintiff Monserrate will not appear on the June 22, 2021 Democratic primary ballot and that the absentee ballots are scheduled to be mailed out on or about May 7, 2021. Should this be allowed to occur, Plaintiff will become irreparably harmed to the point that a delayed decision will be inconsequential due to the time restraints regarding the ballots and the Second Department's hearing date for appeals relating to primary elections (May 12, 2021).

64.     As such, Local Law No. 15 and its application violates the Constitution of the United States as it impinges upon the rights of voters and Plaintiff Monserrate including their First and Fourteenth Amendment rights of free speech, free association, the right to vote, due process and equal protection.

---

[4] Accordingly, the reason that Plaintiff brings the herein action is the New York Supreme Court's refusal to reach the constitutional questions, without cause, even though the City of New York was served with a copy of the petition asserting that Local Law No. 15 violates the rights guaranteed under the First and Fourteenth Amendments of the U.S. Constitution and the corresponding rights under the New York State Constitution. Further, as stated, the Appellate Division will not hear the appeal until after absentee ballots are disseminated.

## COUNT I
### (42 U.S.C. § 1983: First Amendment Right to Vote / Right of Association / Freedom of Speech)

65.     Plaintiff repeats, realleges, and incorporates by reference all the allegations set forth in the preceding paragraphs as if fully set forth herein.

66.     Plaintiff is afforded the fundamental right to run for public office under the Constitution of the United States.

67.     Courts apply a "scrutiny test" where a city ordinance or local law places limits on the right to run for public office or access to the ballot. See, In the Matter of Campbell v Tunny, 196 Misc.2d 860 (2003); Yang v. Kellner, 458 F. Supp. 3d 199, 212 (SDNY 2020) (That test applies to challenges brought by voters challenging their "right to support candidates as voters.").

68.     The New York City Council's decision to pass Int. #374 to bar a certain limited class of returning citizens, in perpetuity with no grandfather provision or grace period, and the subsequent adverse determinations by Defendants Board of Elections in the City of New York and New York City Campaign Finance Board, infringe upon Plaintiff's freedom of speech in that it arbitrarily denies Plaintiff the rights secured under the First Amendment of the U.S. Constitution to run as a duly qualified candidate and the rights of his supporters of free association, free speech and the right to vote for a candidate of their choosing.

69.     The in-perpetuity, retroactive application of Local Law No. 15 imposes a severe burden on Plaintiff's constitutional rights that cannot be justified.

70.     All of the acts and conduct of the Defendants, by their members, agents, employees and/or representatives, herein stated were done under the color of state or local law, while in the performance of their duties.

71.     The fundamental right to vote, which is threatened by Defendants' invalidation of Plaintiff's candidacy, is the "combined right" of persons to run for public office and the right of voters to vote for candidates of their choice. See Campbell v Tunny, 196 Misc.2d 860, 864 (2003).

72.     Defendants, by their members, agents, employees and/or representatives, did act to violate Plaintiff's constitutional rights by actually depriving Plaintiff and his supporters of the entitlement to speak freely through Monserrate's candidacy and the voters' freedom to associate with political candidates of their choice.

73.     Defendants, their members, agents, employees and/or representatives did willfully and knowingly act and intentionally worked to invalidate the candidacy of the Plaintiff and thus infringed upon the Plaintiff's constitutional rights and those of the voters.

74.     Defendants failed to provide and cannot provide a sufficiently compelling, important or legitimate interest as justification for their act of depriving voters and candidates including Plaintiff of their right to vote, right to free speech and right to free association under the First Amendment.

75.     Plaintiff and his supporters were denied their constitutional rights of free speech and freedom of association pursuant to the First Amendment by having their right to vote for the candidate of their choice stripped from them, as Plaintiff Monserrate has been rendered categorically and completely neutered from running for elected office, in the middle of an underway election campaign and in perpetuity.

76.     Any law that purports to give Defendants, their members, agents, employees and/or representatives the authority to disenfranchise the candidates and/or voters runs afoul of the First Amendment.

77.     Defendants, their members, agents, employees and/or representatives have failed to protect the voting rights and associated First Amendment rights of Plaintiff and his supporters.

78.     Defendants, their members, agents, employees and/or representatives have violated and will continue to violate the First Amendment rights of Plaintiff and his supporters if Local Law No. 15 is allowed to stand and be applied by Defendants to prevent Plaintiff Monserrate from being a candidate while disenfranchising the voters that support him.

79.     Plaintiff has demonstrated irreparable injury because he has suffered and continues to suffer violations of his constitutional rights.

80.     Plaintiff has demonstrated irreparable injury in that Plaintiff Monserrate has been completely removed from the ballot.

81.     All election laws necessarily implicate the First Amendment. Gonsalves v. New York State Bd. of Elections, 975 F. Supp. 2d 191, 197 (EDNY 2013).

82.     There exists no legislation that has been found constitutionally sound when enacted during an ongoing election cycle that disqualifies previously qualified candidates from appearing on the ballot.

83.     There is a " … long line of cases upholding ballot access requirements [that] are patently inapplicable, as limiting candidates through reasonable advance requirements provides no justification for the retroactive restriction of the right to vote" and that is harm of an "obviously severe nature." Ayers-Schaffner v. Distefano, 37 F.3d 726, 730 (1st Cir. 1994). See also Hirschfeld v. Bd. of Elections in N.Y.C., 984 F.2d 35, 39 (2d Cir. 1993) ("[T]he public's interest in having [petitioner] as an additional choice on the ballot clearly outweighed any interest the [Board of Elections] may have had in removing [petitioner's] name two business days before the [g]eneral [e]lection.") Yang v Kosinski, 960 F3d 119, 129 (2d Cir 2020).

84.     Thus, by virtue of being (1) an independently severe burden on the right of access to the ballot; and (2) being a severe burden as applied because Local Law No. 15 was passed on the eve of an election, <u>less than four months before the primary election</u>, and solely applied against Plaintiff Monserrate in the midst of said election, Local Law No. 15 must pass strict scrutiny.

85.     Local Law No. 15 is not narrowly tailored to any legitimate state interest; does not use the least restrictive means to advance its purpose; and fails to have the requisite relationship between its mechanisms and the state interest, if any, it purportedly serves.

86.     Therefore, Local Law No. 15 fails strict scrutiny under the Constitution of the United States.

87.     Local Law No. 15 violates the Constitution of the United States as it denies voters the right to vote for a candidate of their choosing and therefore must be invalidated.

## COUNT II
### (42 U.S.C. § 1983: Fourteenth Amendment Equal Protection / Due Process)

88.     Plaintiff repeats, realleges, and incorporates by reference all the allegations set forth in the preceding paragraphs as if fully set forth herein.

89.     Defendants', their members', agents', employees' and/or representatives' decision to invalidate the candidacy of Plaintiff pursuant to Local Law No. 15, which bars returning citizens convicted of certain felonies in perpetuity, violates Plaintiff's right to due process and equal protection of the laws in that it arbitrarily denies Plaintiff the rights secured under the Fourteenth Amendment.

90.     All election laws necessarily implicate the Fourteenth Amendment. <u>Gonsalves v. New York State Bd. of Elections</u>, 975 F. Supp. 2d 191, 197 (EDNY 2013).

91.     Under the Fourteenth Amendment, "No State shall...deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend XIV. The Equal Protection Clause of the Fourteenth Amendment requires "that all persons similarly situated be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985); In the Matter of Campbell v Tunny, 196 Misc.2d 860 (2003).

92.     The Due Process Clause of the Fourteenth Amendment prohibits the States from depriving "any person of … liberty … without due process of law." US Const. Amend. XIV, § 1. Determining which protections are due in a given case requires a careful analysis of the importance of the rights and the other interests at stake. See Mathews v. Eldridge, 424 U.S. 319, 334–35 (1976); Nozzi v. Hous. Auth. of City of L.A., 806 F.3d 1178, 1192 (9th Cir. 2015). Courts must first consider "the nature of the interest that will be affected" by the government's action as well as the "degree of potential deprivation that may be created" by existing procedures. Nozzi, 806 F. 3d at 1192–93. Second, "courts must consider the 'fairness and reliability' of the existing procedures and the 'probable value, if any, of additional procedural safeguards.'" Id. at 1193 (quoting Mathews, 424 U.S. at 343). Finally, courts must consider "the public interest, which 'includes the administrative burden and other societal costs that would be associated with' additional or substitute procedures. Id. (quoting Mathews, 424 U.S. at 347). Overall, "due process is flexible and calls for such procedural protections as the particular situation demands." Mathews, 424 U.S. at 334, (internal quotation and citation omitted).

93.     Defendants' action disqualifying some returning citizens and allowing others to run for City office per Local Law No. 15, must comport with due process, which it does not.

94.     "When an election process 'reache[s] the point of patent and fundamental unfairness,' there is a due process violation." Fla. State Conference of N.A.A.C.P. v. Browning,

522 F.3d 1153, 1183 (11th Cir. 2008) (quoting Roe v. Alabama, 43 F.3d 574, 580 [11th Cir. 1995]).

95.    Local Law No. 15 and/or Int. #374 was written, introduced, passed and applied so as to specifically target Plaintiff Monserrate and deprive him and his supporters of their fundamental rights and meaningful access to the ballot.

96.    Local Law No. 15 and/or Int. # 374, by its intent and application, specifically targets one individual, Plaintiff Monserrate, and by association his supporters as well, as opposed to returning citizen candidates and voters generally. Plaintiff Monserrate was targeted by Local Law No. 15 and by the incumbent, Councilmember Francisco Moya. Such targeting violates Plaintiff's and his supporters' due process rights.

97.    By disqualifying a certain class of returning citizens but allowing others to run at such a late stage in the election cycle, it is clear Defendants' actions are fundamentally unfair, and unjust and illegal. The nature of the interest at stake in this case, namely the right to vote and to have that vote count, is the most sacred liberty interest of all because it preserves all other basic civil, human, economic and political rights.

98.    The challenged law, Local Law No. 15, from February 25, 2021 to the present and beyond, in perpetuity, deprives Plaintiffs, his supporters and all New York voters of their fundamental right to associate with and vote for a candidate of their choice. The challenged law and actions by Defendants cancel Plaintiff Monserrate's ability to be eligible for the June 22, 2021 Democratic primary election but not other returning citizens who many may consider to have committed more vile and egregious acts i.e. murderers, rapists, child predators, treason and terrorists. Allowing those impacted returning citizens to run for City office in 2021 would protect

voters' and Plaintiff's rights with minimal burden to the State. As such, Local Law No. 15 violates Plaintiffs' and his supporters' due process rights.

99.     All of the acts and conduct of the Defendants, by their members, agents, employees and/or representatives, herein stated were done under the color of state or local law, while in the performance of their duties.

100.     Defendants, their members, agents, employees and/or representatives did willfully and knowingly act and intentionally worked to invalidate the candidacy of Plaintiff Monserrate and thus infringed upon Plaintiff's constitutional rights and those associated rights of voters including the rights to equal protection and due process.

101.     Plaintiff has been treated differently than other, similarly situated voters or candidates, without a lawful justification.

102.     Defendants, their members, agents, employees and/or representatives did not provide a sufficiently compelling, important or legitimate interest as justification for their discriminatory act of depriving voters and candidates of their rights under the Equal Protection and Due Process Clauses of the Fourteenth Amendment because they allow other returning citizens namely murderers, rapists, child predators, and even terrorists to run for City offices under Local Law No. 15.

103.     Defendants', their members', agents', employees' and/or representatives' decision to disenfranchise candidates and as a result voters by invalidating Plaintiff, will subject the Plaintiff to unequal treatment under the law, in violation of the Fourteenth Amendment of the United States Constitution based on the arbitrary and capricious nature of their decision and not based on any actual set of facts. If their decision was truly motivated for the public good and

safety of the citizens of the City of New York, Defendants would have also disqualified violent felons, i.e., murderers, rapists, child predators, and terrorists among other categories of criminals.

104.     Leading up to the passage of Local Law No. 15, all donors to campaigns were in an identical position: if the campaign met certain requirements, voter-donors were assured their donations would receive $8-to-$1 matching, and all candidates would be treated fairly.

105.     Plaintiff and donors to all campaigns had a vested interest in having their donations matched.

106.     However, Plaintiff and Plaintiff's donors have been treated differently than the donors to every other campaign.

107.     No government interest can justify that disparate treatment, at least with regard to vested interests in fund-matching. Any law that purports to give Defendants, their members, agents, employees and/or representatives the authority to disenfranchise the voters and/or candidates violates the Fourteenth Amendment.

108.     Defendants, their members, agents, employees and/or representatives have failed to protect the voting rights of Plaintiffs and all other similarly situated voters and candidates.

109.     Defendants, their members, agents, and/or representatives have violated and will continue to violate the Fourteenth Amendment rights of Plaintiff and other similarly situated candidates if Local Law No. 15 is permitted to stand preventing Plaintiff Monserrate from being a candidate and disenfranchising the voters that support him.

110.     Plaintiff has demonstrated irreparable injury because he faces a violation of his constitutional rights.

111.     Plaintiff has demonstrated irreparable injury in that Plaintiff Monserrate has been completely removed from the ballot.

112.     Thus, as applied, Local Law No. 15 violates the United States Constitution's promise of equal protection and due process rights.

## COUNT III
### (Declaratory Judgment Pursuant to 28 USC §§ 2201, 2202)

113.     Plaintiff repeats, realleges and incorporates by reference all the allegations set forth in the preceding paragraphs as if fully set forth herein.

114.     Defendants' actions deny Plaintiff and his supporters of their most basic and important right as Americans: participating in democratic elections.

115.     Defendants' actions defy logic and valid reason as it allows certain returning citizens to run for election while disqualifying others and disenfranchising countless voters. This is fundamentally unjust.

116.     Plaintiff therefore seeks a declaration from this Court that Defendants not only do not have the authority to disqualify ordinarily qualified and viable candidates in the midst of an election, but also have the duty to maintain the election to simultaneously protect the constitutional and fundamental rights of Plaintiff and his supporters with respect to the June 22, 2021 Democratic primary election.

117.     Plaintiff requests this extraordinary remedy for the June 22, 2021 Democratic primary election, given that Plaintiff's and voters' rights, the unequivocal right to vote, the right to associate with a candidate of their choice and the right of equal protection under the law, must be enforced in a nondiscriminatory and non-arbitrary manner.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays that this Court grant the following relief:

(a) On Count I, for violations under the First and Fourteenth Amendments of the United States Constitution, an order enjoining Defendants from enacting, enforcing and/or applying Local Law No. 15 and reinstating Plaintiff Monserrate to the June 22, 2021 Democratic primary ballot for New York City Council District 21, and an order enjoining Defendant New York City Campaign Finance Board to release the matching funds to which Plaintiff's campaign is entitled;

(b) On Count II, for denial of Plaintiff's right to due process and equal protection under the Fourteenth Amendment of the United States Constitution, an order enjoining Defendants from enacting, enforcing and/or applying Local Law No. 15, reinstating Plaintiff Monserrate to the June 22, 2021 Democratic primary ballot for New York City Council District 21, and an order enjoining Defendant New York City Campaign Finance Board to release the matching funds to which Plaintiff's campaign is entitled;

(c) On Count III, issuing a declaratory judgment that Defendants' actions have violated Plaintiffs rights under the United States Constitution and order enjoining Defendants from enacting, enforcing and/or applying Local Law No. 15, reinstating Plaintiff Monserrate to the June 22, 2021 Democratic primary ballot for New York City Council District 21, and an order enjoining Defendant New York City Campaign Finance Board to release the matching funds to which Plaintiff's campaign is entitled;

(d) Granting Plaintiff his attorneys' fees, costs, and litigation expenses pursuant to 42 U.S.C. § 1988; and

(e) Granting such other and further relief as this Court may deem just and proper.

Dated: Lake Success, New York
        April 30, 2021

                                    Respectfully submitted,

                                    AVALLONE & BELLISTRI, LLP

                                    Rocco G. Avallone, Esq.
                                    Attorneys for Plaintiff
                                    3000 Marcus Avenue, Suite 3E07
                                    Lake Success, New York, 11042
                                    (516) 986-2500
                                    ravallone@lawyersab.com