UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
HIRAM MONSERRATE

                        Plaintiff,

            v.                                    Civil Action No.  21-CV-3830

BOARD OF ELECTIONS IN THE CITY OF
NEW YORK, COMMISSIONERS OF THE
BOARD OF ELECTIONS IN THE CITY OF
NEW YORK, NEW YORK CITY CAMPAIGN
FINANCE BOARD, and CITY OF NEW YORK,

                        Defendants.
-----------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
TEMPORARY RESTRAINING ORDER**


                        AVALLONE & BELLISTRI, LLP
                        *Attorneys for Plaintiff*
                        3000 Marcus Avenue, Suite 3E7
                        Lake Success, NY 11042
                        (516) 986-2500

<u>**TABLE OF CONTENTS**</u>

TABLE OF CONTENTS..........................................................................................................i

TABLE OF AUTHORITIES...............................................................................................ii

PRELIMINARY STATEMENT.........................................................................................1

     Access to the Ballot in NYC............................................................................................3

     New York City Campaign Finance.................................................................................4

POINT I:     A TEMPORARY RESTRAINING ORDER SHOULD BE
               ISSUED BECAUSE PLAINTIFF'S FUNDAMENTAL RIGHTS
               INCLUDING FREE ASSOCIATION AND FRANCHISE
               HAVE BEEN UNCONSTITUTIONALLY TARGETED AND
               IRREPARABLY RESTRICTED BY DEFENDANTS FOR
               PERSONAL POLITICAL GAIN...........................................................................5

        A.        Irreparable Harm......................................................................................7

        B.        Likelihood of Success on the Merits.......................................................9

               1.        The Right of Association...............................................................9

               2.        The Burden on First and Fourteenth Amendment Rights.............10

                     a.        Character of the Classification...........................................13

                     b.        Individual Interests Affected by the Classification............13

                     c.        Governmental Interests Asserted in Support
                           of the Classification...........................................................14

                3.        Specific Targeting of Plaintiff's Rights and
                   Associated Rights of voters...........................................................14

        C.        Balance of Equities and Public Interest....................................................16

POINT II:    PLAINTIFF'S REQUESTED TEMPORARY AND
             PRELIMINARY RELIEF IS NARROW AND TAILORED
             SOLELY TO REMEDY THE UNCONSTITUTIONAL
             IMPAIRMENTS.................................................................................................19

CONCLUSION..................................................................................................................19

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page Number(s)**

Anderson v.Celebrezze, 460 U.S. 780, 788 (1983)...........................................................................8

Asa v. Pictometry Intern. Corp., 757 F. Supp. 2d 238, 243 (W.D.N.Y.2010)...............................6

Billington v. Hayduk, 439 F. Supp. 971, 974 (S.D.N.Y. 1977)....................................................17

Buckley v. Am. Constitutional Law Found., Inc., 525 U.S. 182, 192 (1999).............................10

Bullock v. Carter, 405 U.S. 134 (1972)...............................................................................9, 12, 13

C&A Carbone v. Town of Clarkstown, 770 F.Supp. 848, 854 (S.D.N.Y. 1991)..........................7

Campbell v Tunny, 196 Misc.2d 860, 864 (N.Y. 2003)..........................................................12, 14

Citigroup Global Markets v. VCG Special Opportunities Master Fund Limited,
598 F.3d 30 (2d Cir. 2010)..............................................................................................................6

Charette v. Town of Oyster Bay, 159 F.3d 745, 753 (2d Cir. 1998)...............................................7

Church of the Lukumi Babalu Aye v. City of Hialeah, 508 U.S. 520, 533 (1993)................14, 15

City of New York v. Gold Feather Smoke Shop, 597 F.3d 115, 120 (2d Cir. 2004).......................6

City Taxi & Limousine Comm'n, 198 F.3d 317, 322 (2d Cir. 1999)...............................................8

Connecticut Dep't of Envtl. Prot. v. O.S.H.A., 356 F.3d 226, 231 (2d Cir. 2004)........................8

Dunn v. Blumstein, 405 U.S. 330, 335 (1972)..............................................................................13

Elrod v. Burns, 427 U.S. 347, 373-75 (1976)................................................................................7

Flores v. Town of Islip, 382 F. Supp. 3d 197, 245 (E.D.N.Y. 2019)......................................17, 18

Gonsalves v. New York State Bd. of Elections, 974 F. Supp. 2d 191,197 (E.D.N.Y. 2013)..........7

Hirschfeld v. Bd. of Elections in N.Y.C., 984 F.2d 35, 39 (2d Cir. 1993)...................................17

Jolly v. Coughlin, 76 F.3d 469, 482 (2d Cir. 1986)....................................................................7, 8

Holtzman v. Power, 62 Misc.2d 1020, 1024-25 (N.Y. 1970)........................................................12

Kusper v. Pontikes, 414 U.S. 51, 57 (1973)...................................................................................9

Lerman v. Bd. of Elections in City of New York, 232 F.3d 135, 153 (2d Cir. 2000)...................10

Lynch v. City of New York, 589 F.3d 94 (2d Cir. 2009)................................................................6

Make the Rd. New York v. Cuccinelli, 419 F. Supp. 3d 647, 665 (S.D.N.Y. 2019).....................16

Mitchell v. Cuomo, 748 F.2d 804, 806 (2d Cir. 1984)....................................................................7

New York Progress & Prot. PAC v. Walsh, 733 F.3d 483, 488 (2d Cir. 2013)............................17

New York State Bd. of Elections v. Lopez Torres, 552 U.S. 196, 204 (2008).............................10

Poindexter v. Strach, 324 F. Supp. 3d 625, 632 (E.D.N.C. 2018).................................................18

Price v. New York State Bd. of Elections, 540 F.3d 101, 107–08 (2d Cir. 2008)....................7, 10

Republican Nat'l Comm. v. Democratic Nat'l Comm., 140 S. Ct. 1205, 1207 (2020)................18

Rockefeller v. Powers, 78 F.3d 44, 45 (2d Cir. 1996)..................................................................10

Silberberg v. Bd. of Elections of the State of New York,
216 F. Supp. 3d 411, 420–21 (S.D.N.Y. 2016).............................................................................18

Statharos v. New York City Taxi & Limousine Comm'n, 198 F.3d 317, 322 (2d Cir. 1999)........8

Storer v. Brown, 415 U.S. 724, 730 (1974)..................................................................................11

Turner v. Fouche, 396 U.S. 346, 362 (1980)................................................................................12

United States v. Adler's Creamery, 107 F.2d 987, 990 (2d Cir. 1939)..........................................6

Williams v. Rhodes, 393 U.S. 23, 30 (1968)..................................................................................9

Winter v. Natural Res. Def. Council, 555 U.S. 7, 24 (2008).......................................................16

**Other Authorities**                                                                **Page Number(s)**

Goldfeder's Modern Election Law Ballot Access in New York (2012) at Chapter 3, p. 11...........4

New York City Charter § 1139 (2021)............................................................................................1

New York Constitution Art. I, § 1..................................................................................................3

New York Constitution Art. I, § 8..................................................................................................3

New York Constitution Art. I, § 9..........................................................................................3

New York Constitution Art. I, § 11........................................................................................3

New York Constitution, Art. II, § 1.......................................................................................3

New York Constitution, Art. III., § 7.....................................................................................3

New York Election Law § 3-703............................................................................................4

New York Election Law § 6-134.........................................................................................3, 4

New York Election Law § 6-136............................................................................................3

New York Election Law § 6-158.........................................................................................3, 4

New York Executive Order No. 181 (2018)..........................................................................12

New York Fair Chance Act of 2015......................................................................................12

Public Officers Law § 3.........................................................................................................3

U.S. Const. art. I, § 4, cl. 1..................................................................................................11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
HIRAM MONSERRATE

                    Plaintiff,

          v.

BOARD OF ELECTIONS IN THE CITY OF
NEW YORK, COMMISSIONERS OF THE
BOARD OF ELECTIONS IN THE CITY OF
NEW YORK, NEW YORK CITY CAMPAIGN
FINANCE BOARD, and CITY OF NEW YORK,

                  Defendants.
-----------------------------------------------------------X

**MEMORANDUM OF LAW
IN SUPPORT OF TEMPORARY
RESTRAINING ORDER**

Civil Action No.   21-CV-3830

## PRELIMINARY STATEMENT

The relevant factual timeline is as follows:

- On February 11, 2021, the New York City Council passed Local Law No.15, which went into effect upon the signing of the Law by Mayor Bill de Blasio on February 25, 2021. Local Law No.15 amended the New York City Charter to provide that a returning citizen who has been convicted of certain felonies is not eligible to be elected to city office. See New York City Charter § 1139 (2021).

- On February 16, 2021, Defendant New York City Campaign Finance Board (hereinafter referred to as "CFB") denied the release of matching funds to Plaintiff's campaign ("Hiram 21") on the ground that the campaign did not meet the minimum $5,000.00 donations threshold.

- On February 22, 2021, still before the enactment of Local Law No. 15, Plaintiff submitted amendments to his application for matching funds to CFB and indisputably satisfied the threshold requirement.

1

- On March 5, 2021, CFB sent a "Notice of Ineligibility for Public Funds" to the Monserrate campaign, declaring that "Hiram Monserrate is ineligible to be elected to city office and therefore ineligible to receive public funds" pursuant to the new legislation, notwithstanding the fact that as of February 22, 2021, Plaintiff had satisfied the threshold.

- On March 22, 2021, Plaintiff Monserrate filed the designating petition for the Democratic primary election with Defendant Board of Elections in the City of New York (hereinafter referred to as "BOE").

- On April 2, 2021, an invalidation petition was filed in Supreme Court, Queens County (Index No. 707700/2021).

- On April 14, 2021, Defendant BOE voted to invalidate Plaintiff Hiram Monserrate's designating petition on the basis of Local Law No. 15.

- On April 16, 2021, Plaintiff filed a validation petition in Supreme Court, Queens County (Index No. 708837/2021).

- On April 26, 2021, the validation petition was denied on procedural grounds. Said decision is in the process of being appealed.

- On May 7, 2021, Defendant BOE is scheduled to mail out absentee ballots for the June 22, 2021 Democratic primary elections.

- On May 12, 2021, the Appellate Division, Second Department, is scheduled to hear all appeals regarding election law matters. Said date is after May 7, 2021, the date on which the BOE is scheduled to send out the absentee ballots. Therefore, Plaintiff will be irreparably harmed without any possible recourse once the absentee ballots are mailed out without Plaintiff's name appearing thereon.

Since on the eleventh hour before the 2021 NYC Democratic primary election, Local Law No.15 went into effect and implicates fundamental rights by disqualifying, *in perpetuity* and *with no grandfather provision*, a previously convicted citizen from citywide pubic office, a temporary restraining order must issue. Plaintiff believes, at the adjudication of this matter, this Court will find Local Law No.15 unreasonably impinges upon the voters' fundamental right of the opportunity to vote for a candidate of their choosing, and the corresponding candidate's individual right to run for public office, as there are less restrictive means to accommodate the important governmental interests in the intended legislation.

**Access to the Ballot in NYC**

In New York, the right to become a candidate for public office or pursue a party position is a valuable and fundamental right.[1] Before a candidate can be elected to office, the candidate's name must appear on the ballot. To qualify for the ballot, candidates usually need to satisfy the constitutional and statutory requirements such as age, residency, citizenship, and the filing of a petition with sufficient signatures of qualified voters demonstrating support to justify the governments' expenditure of placing the candidate's name on the official ballot, both for public or party positions. (See New York Constitution, Art. III., § 7; Public Officers Law § 3 and generally Election Law § 6-134). The same is generally true of municipal office.

The legislature generally sets the period, by statute, within which a candidate may petition to secure a place on the ballot, for a certain period prior to a primary or general election (See Election Law § 6-158[1]). Specifically, in this 2021 election cycle, the New York City Democratic Party primary is scheduled for June 22, 2021.[2] To ballot petition for any city council district within New York City, the candidate must present to the NYC Board of Elections a

---

[1] (See, New York Constitution, Art. II, § 1 [right to vote]; Art. I, § 1 [right against disfranchisement]; Art. I, § 11 [equal protection]; Art. I, § 9 [right of association]; Art. I, § 8 [freedom of speech]).
[2] https://www.elections.ny.gov/NYSBOE/law/2021PoliticalCalendar.pdf (accessed April 29, 2021).

minimum of 280 valid signatures from registered Democratic Party members to qualify for a

place on the ballot (Election Law §6-136). March 2, 2021, is the first day for signing designating

petitions (§6-134[4]) and March 22, 2021, through March 25, 2021, are scheduled dates for filing

designating petitions with the BOE which was filed by Plaintiff Monserrate on March 22, 2021.

(§6-158[1]). The candidate may circulate petitions only on and during those dates and must file

the petition timely with the local board of elections.  (See generally, Goldfeder's Modern

Election Law Ballot Access in New York [2012] at Chapter 3, p. 11). In addition to monetary

donations and meeting initial filing deadlines, Plaintiff Monserrate also paid to Defendant CFB a

fine in the amount of $26,473.00 on January 13, 2021, which was required of him in order to run

again for election and was accepted by the CFB. Additionally, Plaintiff Monserrate has received

over 1000 signatures for the 2021 primary election before Local Law No. 15 of 2021 was

enacted.

**New York City Campaign Finance**

The CFB is an independent New York City agency that serves to provide campaign

finance information to the public, enable more citizens to run for office by granting public

matching funds, increase voter participation and awareness, strengthen the role of small

contributors, and reduce the potential for actual or perceived corruption. The CFB was

established with the mission of reducing the influence of large private contributions in the

political process. To qualify and participate in the voluntary Campaign Finance Program

matching funds are available to a candidate for Mayor, Public Advocate, Comptroller, Borough

President, or City Council.  Eligibility requirements are set forth in NY Election Law § 3-703. At

the time Plaintiff Monserrate submitted his petition and required documentation, he was an

eligible candidate. Pursuant to CFB procedures, all candidates running for city office are

required to file disclosure statements regarding all contributions and expenditures by the deadline of March 15, 2021, regarding the disclosure period of January 12, 2021, through March 11, 2021, in order to be eligible to receive matching funds.

**POINT I**

**A TEMPORARY RESTRAINING ORDER SHOULD BE ISSUED BECAUSE PLAINTIFF'S FUNDAMENTAL RIGHTS INCLUDING FREE ASSOCIATION AND FRANCHISE HAVE BEEN UNCONSTITUTIONALLY TARGETED AND IRREPARABLY RESTRICTED BY DEFENDANTS FOR PERSONAL POLITICAL GAIN.**

The need for a temporary restraining order ("TRO") is rooted in preserving the fundamental right to vote, and this right would be empty if it did not include the right of choice for whom to vote. Preserving the status quo requires enjoining enforcement of Local Law No. 15 and allowing the Democratic Party primary election to continue with those candidates already engaged in the election. Although a local legislative body enjoys the inherent power to prescribe qualifications for its elective office, that power is sharply limited by the constitutional guaranty of the right to vote, and in New York State said right to vote cannot be restricted haphazardly or ad hoc or without a legislative record to justify the preclusion of a class of citizens who have already paid their debt to society. Local Law No. 15, which bars returning citizens *in perpetuity* and with *no grace period or grandfather clause* regarding individuals who have previously run or are currently running for elected office, is void on its face and in its application to disqualify the candidacy of Plaintiff Hiram Monserrate and preemptively nullify the votes of his supporters. Local Law No. 15 unconstitutionally deprives them of their rights under the First and Fourteenth Amendments to the Constitution.

The Court should grant the preliminary injunction "to restore the status quo ante" and enable the democratic process to run its course. "The purpose of an injunction [pending

litigation] is to guard against a change in conditions which will hamper or prevent the granting of

such relief as may be found proper after the trial of the issues. Its ordinary function is to preserve

the status quo and it is to be issued only upon a showing that there would otherwise be danger of

irreparable injury." United States v. Adler's Creamery, 107 F.2d 987, 990 (2d Cir. 1939); see

also Asa v. Pictometry Intern. Corp., 757 F. Supp. 2d 238, 243 (W.D.N.Y.2010) ("[T]he court's

task when granting a preliminary injunction is generally to restore, and preserve, the status quo

ante, i.e., the situation that existed between the parties immediately prior to the events that

precipitated the dispute."). Here, the status quo immediately prior to enforcement of Local Law

No.15 is the unimpeded Democratic Party primary with all candidates on the ballot. Accordingly,

the Court's injunction restores all candidates who have filed petitions and otherwise qualify for

NYC office and were removed from the ballot based on Local Law No. 15 and restores

eligibility to matching funds.

Defendants have robbed Plaintiff and supporters of his candidacy of the benefits and

protections of the Constitution. Preliminary injunctive relief should be granted where plaintiff

demonstrates (1) irreparable harm; (2) either (a) likelihood of success on the merits, or (b)

sufficiently serious questions going to the merits to make them a fair ground for litigation; and

(3) a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

Citigroup Global Markets v. VCG Special Opportunities Master Fund Limited, 598 F.3d 30 (2d

Cir. 2010); Lynch v. City of New York, 589 F.3d 94 (2d Cir. 2009); City of New York v. Gold

Feather Smoke Shop, 597 F.3d 115, 120 (2d Cir. 2004). Plaintiff meets each and every one of

these prongs entitling them to the requested relief.

A.   **Irreparable Harm**

Plaintiff Monserrate will suffer irreparable harm in that Local Law No. 15, as more fully

discussed below, unconstitutionally impairs Plaintiff Monserrate's constitutional rights of

association and the rights of his supporters to vote for the candidate of their choosing, thus

disenfranchising them.  In addition, as previously stated, the BOE is scheduled to mail out the

absentee ballots on May 7, 2021. An appeal from the aforementioned Supreme Court, Queens

County matter will not be heard until May 12, 2021, which is after the mailing of the ballots, at

which point Plaintiff and his campaign will be irreparably harmed.

It is well established that a constitutional deprivation, by itself, for even a minimal period

of time, constitutes irreparable harm. Elrod v. Burns, 427 U.S. 347, 373-75 (1976). "When an

alleged deprivation of a constitutional right is involved, most courts hold that no further showing

of irreparable injury is necessary." Mitchell v. Cuomo, 748 F.2d 804, 806 (2d Cir. 1984). Indeed,

many courts state that a *presumption* of irreparable harm flows from a violation of constitutional

rights. Jolly v. Coughlin, 76 F.3d 469, 482 (2d Cir. 1986) ("The district court . . . properly relied

on the presumption of irreparable injury that flows from a violation of constitutional rights.");

see also Charette v. Town of Oyster Bay, 159 F.3d 745, 753 (2d Cir. 1998); C&A Carbone v.

Town of Clarkstown, 770 F.Supp. 848, 854 (S.D.N.Y. 1991).

All election laws necessarily implicate the First and Fourteenth Amendments." Gonsalves

v. New York State Bd. of Elections, 974 F. Supp. 2d 191,197 (E.D.N.Y. 2013) (internal

quotation marks and citation omitted). And where a challenged regulation "governs the

registration and qualification of voters, the selection and eligibility of candidates, or the voting

process itself, [it] inevitably affects—at least to some degree—the individual's right to vote and

his right to associate with others for political ends." Price v. New York State Bd. of Elections,

540 F.3d 101, 107–08 (2d Cir. 2008) (quoting Anderson v.Celebrezze, 460 U.S. 780, 788 [1983] [internal quotation marks omitted]).

In the Second Circuit, it is well-settled that an alleged constitutional violation constitutes irreparable harm. See, e.g., Connecticut Dep't of Envtl. Prot. v. O.S.H.A., 356 F.3d 226, 231 (2d Cir. 2004) ("[W]e have held that the alleged violation of a constitutional right triggers a finding of irreparable injury." [internal quotation marks and citations omitted]); Statharos v. New York City Taxi & Limousine Comm'n, 198 F.3d 317, 322 (2d Cir. 1999) ("Because plaintiffs allege deprivation of a constitutional right, no separate showing of irreparable harm is necessary."); Jolly, 76 F.3d at 482 (2d Cir. 1996) (clarifying that "it is the alleged violation of a constitutional right that triggers a finding of irreparable harm" and a substantial likelihood of success on the merits of a constitutional violation is not necessary).

Here, in addition to the deprivation of constitutional rights, the harm faced by Plaintiff is severe and irreversible. Plaintiff Monserrate has already paid a fine in the amount of $26,473.00 as a mere preliminary matter for his candidacy. Further, his name will be totally and completely prevented from appearing on the ballot on Election Day in the 2021 Democratic Primary. Defendant BOE is scheduled to disseminate absentee ballots on May 7, 2021. Once those ballots are issued without Plaintiff's name appearing thereon, all recourse will be foreclosed, and appeals will not be heard by the Appellate Division, Second Department until May 12, 2021. At this point, the horse is out of the barn, and so the relief requested herein is not only appropriate but the only remaining relief available to Plaintiff.

Further, Plaintiff Monserrate has already run for office as a Democrat and a returning citizen four times prior to the passage of Local Law No. 15 and the current election. Now, Defendants seek to bar Plaintiff Monserrate's candidacy, in perpetuity and with no grandfather

provision, as well as hamstring Plaintiff and his campaign by denying access to the public

campaign funds to which he would otherwise be entitled. Additionally, Plaintiff's supporters will

be irreparably harmed in that their votes for the candidate of their choosing will be categorically

denied if Plaintiff Monserrate is allowed to be kept off the ballot despite already having engaged

in campaigning, petition signing, receiving monetary donations and making expenditures in

connection with the election campaign. In practical effect, voters' right to cast their ballots for a

viable candidate of their choice has been severely limited if not completely destroyed by

Defendants' delegitimizing Plaintiff Monserrate's ability to run for public office.

**B.**     **Likelihood of Success on the Merits**

Plaintiff makes a clear and substantial showing of the likelihood of success on the merits

in that the constitutional rights of association, freedom of speech, right to vote, right against

disenfranchisement, due process and equal protection rights are being violated by the passage

and implementation of Local Law No. 15 against Plaintiff Monserrate and his supporters.

**1.**     **The Right of Association**

Although "administration of the electoral process is a matter that the Constitution largely

entrusts to the States," the Supreme Court has long recognized that "unduly restrictive state

election laws may so impinge upon freedom of association as to run afoul of the First and

Fourteenth Amendments." Kusper v. Pontikes, 414 U.S. 51, 57 (1973). That includes Local Law

No. 15.

Ballot access rules implicate "two different, although overlapping, kinds of rights—the

right of individuals to associate for the advancement of political beliefs, and the right of qualified

voters, regardless of their political persuasion, to cast their votes effectively." Williams v.

Rhodes, 393 U.S. 23, 30 (1968); see Bullock v. Carter, 405 U.S. 134, 143 (1972) ("[T]he rights

of voters and the rights of candidates do not lend themselves to neat separation; laws that affect

candidates always have at least some theoretical, correlative effect on voters."). "[N]o litmus-

paper test will separate valid ballot access provisions from invalid interactive speech restrictions

. . . [b]ut the First Amendment requires [courts] to be vigilant in making those judgments, to

guard against undue hindrances to political conversations and the exchange of ideas." Buckley v.

Am. Constitutional Law Found., Inc., 525 U.S. 182, 192 (1999) (internal quotation marks and

citations omitted). That requirement extends to primary elections like the one here. See New

York State Bd. of Elections v. Lopez Torres, 552 U.S. 196, 204 (2008).

The Second Circuit has repeatedly affirmed district court orders striking down unduly

burdensome ballot access requirements in primary elections. See, e.g., Lerman v. Bd. of

Elections in City of New York, 232 F.3d 135, 153 (2d Cir. 2000) (invalidating requirement that

witnesses for primary ballot access petitions reside in particular congressional district);

Rockefeller v. Powers, 78 F.3d 44, 45 (2d Cir. 1996) (affirming district court order reducing

number of signatures required to appear on presidential primary ballot).

Voters "have an associational right to vote in political party elections, and that right is

burdened when the state makes it more difficult for these voters to cast ballots." Price, 540 F.3d

at 108 (2d Cir. 2008) (citations omitted). Likewise, "candidates' associational rights are affected,

in at least some manner, when barriers are placed before the voters that would elect these

candidates to party positions." Id.

### 2.    The Burden on First and Fourteenth Amendment Rights

In assessing challenges to ballot-access restrictions under the First and Fourteenth

Amendments, courts recognize the centrality of the right to vote to our democratic system and

impose stringent rules on governments that try to infringe on that right. Plaintiff submits that

disqualifying a host of returning citizens in perpetuity from eligibility based on stale, previous felony convictions, implicates fundamental constitutional rights, especially on the eve of the June 22, 2021 Democratic Party primary election for New York City for City Council, District 21, Queens County, and denies equal protection to those who seek to exercise those rights.

The Constitution provides that States may prescribe "[t]he Times, Places and Manner of holding Elections for Senators and Representatives." U.S. Const. art. I, § 4, cl. 1. Further, "[A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." Storer v. Brown, 415 U.S. 724, 730 (1974). Here, the subject legislation targets Plaintiff Monserrate and his supporters in the current, ongoing election cycle in which they have already taken affirmative steps such as petitioning and donating money, to their detriment, in furtherance and support of Plaintiff Monserrate's candidacy. Not only does this law run contrary to the trend of restorative justice efforts by city and state officials, but it also throws the current election into upheaval. In other words, it only serves to undermine order and inject chaos into the election.

Notably, New York State legislator Catalina Cruz introduced a bill, called the Clean Slate Act, aimed to effectively seal and expunge the criminal history of New Yorkers who have been convicted of a crime as a means to help them integrate back into society. "As part of our ongoing pursuit of true criminal justice reform, we must focus on human dignity, fairness, and guaranteeing that individuals are not punished beyond their sentences," Cruz said. A person convicted of a felony–who serves prison time–would have their record automatically sealed three years after getting out of jail. After seven years of leaving prison, the record would be expunged. This restorative justice principle is difficult to square Local Law No.15, both in theory and in practical application.

Further, the New York City Council and Mayor's office have a longstanding history of promoting restorative justice policies and protecting the rights and privileges of returning citizens. In terms of restorative justice, Local Law No. 15 is completely retrograde. For example, the Fair Chance Act of 2015 makes it unlawful to even ask a job applicant about their criminal history. Further, the right to vote in New York is afforded to all returning citizens who have completed their prison sentences, including those who remain on parole or on probation, per Governor Andrew Cuomo's Executive Order No. 181 dated April 18, 2018, which was endorsed by Defendants.

Although the States have the authority to determine voter qualifications and the manner of elections, "this power must be exercised in a manner consistent with the Equal Protection Clause of the Fourteenth Amendment." Bullock, 405 U.S. at 140-41. There exists "a federal constitutional right to be considered for public service without the burden of invidiously discriminatory disqualification." Turner v. Fouche, 396 U.S. 346, 362 (1980). The Supreme Court has held that laws restricting ballot access may unlawfully discriminate "against the candidates so excluded or the voters who wish to support them," and that "the rights of voters and the rights of candidates do not lend themselves to neat separation." Bullock, 405 U.S. at 141-43. The fundamental right to vote, which is threatened by Defendants' invalidation of Plaintiff's candidacy, is the "combined right" of persons to run for public office and the right of voters to vote for candidates of their choice. See Campbell v Tunny, 196 Misc.2d 860, 864 (N.Y. 2003). Election laws favoring incumbent candidates and disadvantaging their challengers without a rational basis for such favoritism odiously violate basic constitutional principles. Holtzman v. Power, 62 Misc.2d 1020, 1024-25 (N.Y. 1970). Further, in determining whether candidate restrictions are deserving of close scrutiny, "it is essential to examine in a realistic light the

12

extent and nature of their impact." <u>Bullock</u>, 405 U.S. at 143. Close scrutiny is required where the restriction is of a "patently exclusionary character" that is "neither incidental nor remote" in its impact on voters, which is the case in the instant matter. <u>Id.</u> at 143-44. Courts will "look, in essence, to three things: the character of the classification in question; the individual interests affected by classification; and the governmental interests asserted in support of the classification." <u>Dunn v. Blumstein</u>, 405 U.S. 330, 335 (1972).

### a.        Character of the Classification

Here, the classification is for "certain felonies, in relation to public corruption and depriving the public of honest services." It is respectfully submitted that it is a deprivation of honest services to the public to legislatively single out and hamstring a viable candidate for office with concrete support among voters in his District. This classification is suspect in that it presupposes that individuals are incapable of reform, in perpetuity and with no grandfather provision to account for individuals who have run for office as returning citizens. It is further suspect in that it flies in the face of the established policies of expanding rights for returning citizens and in favor of restorative justice generally, and thus serves no legitimate governmental interest.

### b.        Individual Interests Affected by the Classification

The individual interests here are clearly fundamental constitutional rights, including the cherished right to vote, the right of political association, free speech, due process, and equal protection under the law. The interests of those who have petitioned, donated, organized and otherwise supported candidate Monserrate, cannot be understated given that these individual voters have taken affirmative steps to their detriment and in reliance on the settled expectation that Plaintiff Monserrate was an eligible and viable candidate, and thus their "combined right" in

13

association with said candidacy was fully vested. See Campbell, 196 Misc.2d 860 at 864.

Accordingly, the abrupt removal of Plaintiff Monserrate from the election campaign that is

underway strikes at the heart of their right to cast an effective vote for a candidate of their

choosing without substantial limitation and against settled expectations.

c.     <strong>Governmental Interests Asserted in Support of the Classification</strong>

The purported rationale for Local Law No. 15's prohibitions on a certain class of

returning citizens from running for office is "in relation to public corruption and depriving the

public of honest services." As stated, this rationale is merely a pretext for targeting a political

minority and a single candidacy, in particular for the benefit of the incumbent candidate,

Councilmember Francisco Moya (the individual who originally authored/sponsored this bill in

2018 but never brought it to the floor of City Council until the realized threat posed by Plaintiff's

candidacy to his political career). There are also less restrictive means for achieving this stated

purpose, even if given deference, in that the ban is for life, and candidates who have run or

served in office in recent history are now abruptly banned and not grandfathered in, especially

given that such candidates including Plaintiff have run and won elections as returning citizens in

the past without any issues or documented violations of the public trust. It is strange how the

Defendants have had an epiphany in this regard only after Plaintiff Monserrate posed a political

threat to the incumbent and original author/sponsor of the legislation, Councilmember Moya.

<strong>3.     Specific Targeting of Plaintiff's Rights and Associated Rights of Voters</strong>

Even if a law is generally applicable on its face, it violates First Amendment rights "if the

object of a law is to infringe upon or restrict" the exercise of those rights. Church of the Lukumi

Babalu Aye v. City of Hialeah, 508 U.S. 520, 533 (1993). Although said case concerned the

exercise of religious freedom, here Plaintiff's and his supporters' constitutional rights including

14

the right to vote for a candidate of their choosing without substantial limitation by state action should be afforded no less protection than religious freedoms. Id. This is especially so when it is their speech, their association, and their vote that is targeted both by the design and the practical operation of the law in the midst of an ongoing election campaign. Here, Plaintiff Monserrate is similarly the object of the legislation created by his political opponents with the purpose of silencing him and his supporters. Further, the text on the face of the law should not be dispositive, and courts should also consider the covert suppression of rights as the law intends or achieves by its actual operation. Id. at 534-35 (affording constitutional protections "against governmental hostility which is masked, as well as overt"). Since Local Law No. 15 runs directly contrary to the legislative trend toward restorative justice, the purported purpose of the law to protect against "public corruption and depriving the public of honest services" is clearly inapposite and merely a pretext to target Plaintiff Hiram Monserrate and remove him from contention by his political competitors. By doing so, Defendants have also violated the associated rights of Plaintiff's supporters/voters in a targeted fashion. This Court should deny Defendants' abuse and weaponization of the political process to target a discrete, identifiable class of voters for their own political gain.

A 'facial challenge' to a statute considers only the text of the statute itself, not its application to the particular circumstances of an individual. An 'as-applied challenge,' on the other hand, requires an analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right. Local Law No.15 as it was applied here, however, upended Plaintiff's settled expectation that he would remain on the ballot, and his supporters and voters would have the ability to vote for him but for Local Law No. 15. When Plaintiff Hiram

Monserrate declared his candidacy and made all subsequent applications to Defendants BOE and CFB, the settled expectation was that his name would appear on the ballot and his campaign would receive matching funds. If Local Law No. 15 is allowed to remain in effect, Plaintiff Monserrate would be denied his fundamental right, in perpetuity, from participating in civic life, and that is unconstitutional.

The voters who signed the designating petitions naming Plaintiff Hiram Monserrate as candidate, and those who took those steps required of a candidate to appear on the ballot in the NYC Council District 21 by timely filing the designating petition with the BOE, was all done with the goal of allowing Democratic Party voters and supporters to express their views and influence by voting in advancement of their political beliefs. Local Law No.15 imposes a severe and too heavy a price on Plaintiff's and his supporters' rights to free association and cannot sustain this Court's strict scrutiny.

C.      **Balance of Equities and Public Interest**

The equities tip strongly in Plaintiff's favor for the reasons already discussed. In assessing the balance of equities, "the court must 'balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief,' as well as 'the public consequences in employing the extraordinary remedy of injunction.'" Make the Rd. New York v. Cuccinelli, 419 F. Supp. 3d 647, 665 (S.D.N.Y. 2019) (quoting Winter v. Natural Res. Def. Council, 555 U.S. 7, 24 [2008]). Plaintiff's injuries arising from denied ballot access and eligibility for public office on the eve of a primary are substantial. If all candidates are removed from the ballot and the primary is held, voters will be deprived of the opportunity to vote for a candidate of their choice and shape the course of events, and voters will lose the chance to express their support for a candidate who shares their views. The loss of these First

Amendment rights is a heavy hardship. See New York Progress & Prot. PAC v. Walsh, 733 F.3d

483, 488 (2d Cir. 2013) (holding that denial of First Amendment expressive rights constitutes

"significant" hardship); Billington v. Hayduk, 439 F. Supp. 971, 974 (S.D.N.Y. 1977) ('[T]he

hardship to plaintiff in not being considered . . . as a candidate in the upcoming election in

possible violation of his rights far outweighs any inconvenience that defendants might suffer in

having to include plaintiff's name on the ballot."). There is also a strong public interest in

permitting a Primary Election to proceed with the full roster of qualified candidates. "[S]ecuring

First Amendment rights is in the public interest." New York Progress & Prot. PAC, 733 F.3d at

488.  Specifically, the public has an interest in being presented with several viable options in an

election. See Hirschfeld v. Bd. of Elections in N.Y.C., 984 F.2d 35, 39 (2d Cir. 1993) ("[T]he

public's interest in having [plaintiff] as an additional choice on the ballot clearly outweighed any

interest the [Defendants] may have had in removing [plaintiff's] name two business days before

the [g]eneral [e]lection."). There is no question that Plaintiff Monserrate is a viable candidate

given, e.g., his collecting over 1000 valid signatures (over and above the minimum requirement

of 270 signatures) and the motivation by Defendants to enact Local Law No. 15 in order to keep

Plaintiff Monserrate off of the ballot and preserve their own political careers by delegitimizing

Monserrate's candidacy. By removing Plaintiff Monserrate from the roster and upsetting the

settled expectation that voters may vote for him and his policies, the voters including supporters

of Plaintiff's candidacy, in every practical sense, have been substantially if not completely

limited in regard to their choice for whom to vote.

Moreover, because "the conduct of elections is so essential to a state's political self-

determination," there is a "strong public interest in having elections go forward." Flores v. Town

of Islip, 382 F. Supp. 3d 197, 245 (E.D.N.Y. 2019) (citations omitted). Courts frequently rely on

this principle to avoid issuing injunctions that would postpone or disrupt an election. See, e.g.,

Silberberg v. Bd. of Elections of the State of New York, 216 F. Supp. 3d 411, 420–21 (S.D.N.Y.

2016); Flores, 382 F. Supp. 3d at 245. The same rule also counsels against allowing a state to

refuse to conduct a consequential race when it is possible for it to safely go forward. Of course,

even faced with such serious concerns, "federal courts should ordinarily not alter the election

rules on the eve of an election." Republican Nat'l Comm. v. Democratic Nat'l Comm., 140 S. Ct.

1205, 1207 (2020).

      In this regard, the essential question is whether Defendants can change the rules in the

midst of an election campaign to target one candidate in particular and his supporters. This Court

should find that Defendants should not be allowed to upend an underway election campaign and

run roughshod over the rights of candidate Plaintiff, his supporters, and the voters at large, as

**there is not "any legislation that has been found constitutionally sound when enacted**

**during an election cycle that disqualifies previously qualifying candidates from appearing**

**on a ballot."** Poindexter v. Strach, 324 F. Supp. 3d 625, 632 (E.D.N.C. 2018) (emphasis added).

The reasoning behind said finding in the Poindexter matter is simply that voters, candidates and

the municipality depend on the premise that the rules of an election will not be changed

midstream during an election cycle. Id. It has been stated on numerous occasions that New York

has a unique established system of the processes of a primary election. For this Court to permit

Defendants to amend the rules in the middle of an election cycle, four months before primaries,

would essentially sanction the legislature to predetermine the results of an election.

## POINT II

### PLAINTIFF'S REQUESTED TEMPORARY AND PRELIMINARY RELIEF IS NARROW AND TAILORED SOLELY TO REMEDY THE UNCONSTITUTIONAL IMPAIRMENTS.

To the extent that this Court is reluctant to become involved in New York City elections, it is respectfully submitted that Plaintiff's requested temporary and preliminary relief is narrow, reasonably tailored and specific to remedy the unconstitutional impairments herein and is thus wholly appropriate and necessary. Plaintiff respectfully asks this Court to enjoin the application of Local Law No. 15 preventing Plaintiff Monserrate from running and his name appearing on the ballot for New York City Council and restricting the release of matching funds by the CFB.

### CONCLUSION

As such, based on the aforementioned, Plaintiff has made a strong showing of irreparable harm if not granted emergency relief and has established a clear and substantial likelihood of success on the merits of his First and Fourteenth Amendment claims. Moreover, Plaintiff has demonstrated that the balance of equities tips decisively in his favor, and in furtherance of the public interest by such relief. Accordingly, the Court should hold that Plaintiff has established entitlement to a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure. and grant the requested relief.

Dated: April 29, 2021

Yours, etc.,

AVALLONE & BELLISTRI, LLP

By: Rocco G. Avallone, Esq.
Attorneys for Plaintiff
3000 Marcus Avenue, Suite 3E07
Lake Success, NY 11042
(516) 986-2500
ravallone@lawyersab.com