UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

HIRAM MONSERRATE,

                                          Plaintiff,     21 CV 3830 (LJL)

        -v-

BOARD OF ELECTIONS IN THE CITY OF NEW YORK, *et al.*,

                                          Defendants.

------------------------------------------------------------------------ x

**NEW YORK CITY CAMPAIGN FINANCE BOARD, BOARD OF ELECTIONS IN THE CITY OF NEW YORK, AND THE CITY OF NEW YORK'S MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION FOR A PRELIMINARY INJUNCTION**

       Defendants New York City Campaign Finance Board (the "CFB"), the Board of Elections in the City of New York (the "BOE"), and the City of New York (the "City," together with the CFB and the BOE, the "Defendants"), submit this memorandum of law in opposition to plaintiffs' motion for a preliminary injunction. Plaintiff, a former putative candidate for election at the June 22, 2021 Democratic Party Primary Election to be the Democratic Party's nominee for election to the public office of member of the New York City Council from the 21st District ("Council Member") alleges that the application of Local Law 15 of 2021 ("LL15") to him violated his rights under both the First and Fourteenth Amendments to the United States Constitution. LL15 disqualifies people convicted of certain crimes from holding elected office within the City of New York (Mayor, Comptroller, Public Advocate, Borough President, Council Member – collectively, "Local Offices"). Plaintiff makes numerous claims based upon faulty recitations of "fact" and misinterpretation of applicable law. With regard to LL15 itself, he

claim that it is unconstitutional, facially – because there are less restrictive means by which the City could achieve its objective – and as applied to him – because it was allegedly enacted after he had become a candidate for election, and therefore his candidacy must be restored and his name placed on the ballot. With regard to the CFB,[1] he claims that it wrongfully denied him matching funds on February 16, 2021 (though he admits, *sub silentio*, that his filings were inadequate at the time), and then again on February 22, 2021, after he had amended and supplemented his CFB filings, and then on March 5, 2021, wrongfully excluded him from the program due to his ineligibility for election pursuant to LL15. As set forth below, LL15 is a valid legislative enactment – both facially and as applied to plaintiff – and CFB properly denied Hiram 21 matching funds because the campaign had not satisfied the requirements set forth in the Administrative Code of the City of New York (the "Admin Code") to qualify for matching funds on any disbursement prior to LL15's enactment and once LL15 became law, plaintiff was ineligible to hold Local Office thereby excluding his campaign committee from receiving matching funds.

More important here, though, plaintiff's delay in bringing this action fully bars any entitlement to relief (were he even entitled to such) pursuant to the doctrine of laches. As described more fully below, plaintiff has been well aware of the import of LL15 for at least nearly two months yet he waited until immediately prior to the BOE's deadline for mailing certain ballots to commence this action. Thus, the instant motion for interim injunctive relief should be denied and the complaint should be dismissed.

---

[1] Candidates are never personally entitled to matching funds under the Administrative Code; campaign committees are. Here, the relevant campaign was Hiram 21, which is not a plaintiff here. *See* Admin Code, § 3-705 (a candidate's "principal committee" may receive payment of matching funds).

-3-

In addition to the foregoing, due to the short period of time between Defendants learning of this matter and the hearing thereon, Defendants reserve their right to raise additional objections, both legal and factual, in opposition to the motion and the underlying complaint, including, but not limited, to preclusion.

Finally, should the Court be inclined to grant plaintiff's motion for a preliminary injunction, prior to the CFB Defendants being compelled to disburse any funds, plaintiff should be required to provide security in an amount equal to any matching funds disbursed pursuant to such injunction together with an amount equal to the CFB's costs incurred in reviewing the Hiram 21 filings to determine the amount of such disbursement.

## FACTS

New York City has a matching funds program that is administered by the CFB (the "Program"). *See* Admin Code, § 3-701, *et seq*. To be eligible to receive public funds under the Program, candidates must satisfy a minimum fundraising threshold as set forth in Admin Code. For candidates for City Council, the threshold is $5,000 in matchable contributions comprised of sums of up to $175 per contributor including at least 75 matchable contributions of $10 or more from residents of the district in which the seat is to be filled. Admin Code, § 3-703(2)(a)(iv).

Additionally, to be eligible to receive public funds, candidates must meet all the requirements of law to have their name appear on the ballot or, for payments occurring prior to two weeks after the final day to file designating petitions for a primary election, certify that they intend to meet all the requirements to have their name appear on the ballot. *See* Admin Code, § 3-703(1)(a). A person who is ineligible to be elected to an office is precluded from being nominated for election to that office. *See* N.Y. Election Law, § 6-122.

All matching claims are subject to audit review. Even where a candidate demonstrates eligibility to receive public funds, the CFB may decline to match any individual contribution to that candidate for reasons including, but not limited to, inaccurate or incomplete reporting or documentation. *See e.g.*, Admin Code, §§ 3-703(1)(d), (12); Declaration of Danielle Willemin ("Willemin Decl."), ¶ 3.[2] Not all candidates who file certifications with the CFB to enter the Program will appear on the ballot. *Id*. at 8.

---

[2] The Willemin Decl. was originally filed in *Shabazz v. NYC CFB, et al.*, pending in the Southern District of New York, Docket No. 21-3069 (LJL)("*Shabazz*"), (Dkt. No. 20), a case brought by supporters of Mr. Monserrate seeking similar relief against the CFB.

For the 2021 primary elections, the scheduled public funds payment dates are December 15, 2020 and January 15, February 16, March 15, April 15, May 13, May 27, and June 17, 2021. The December 15, January 15, February 16, and March 15 payments occurred prior to two weeks after the final day to file designating petitions for the primary election. The April 15 payment occur ed after that cutoff date, but because ballot determinations were not yet final, the CFB treated it as a pre-ballot determination for purposes of candidate eligibility. *See* Willemin Decl., ¶ 7.

For the 2021 elections, the pre-primary disclosure statement filing deadlines during the year of the election are January 15, March 15, May 21, and June 11, 2021. Each public funds payment is based on the most recent disclosure statement filing. Payment determinations for February 16 were based on the January 15 filing, while payment determinations for March 15 were based on amendments to previous filings submitted on or before February 24. Payment determinations for April 15 were based on the March 15 filing. *Id*. at 9.

Monserrate submitted a Certification to enter the Program on January 8, 2021. On January 15 and March 15, 2021, Monserrate's campaign filed disclosure statements reporting financial activity to the CFB. *Id*. at ¶ 10. On February 16, 2021, CFB staff sent Monserrate a nonpayment determination stating that he was not eligible to receive public funds at the next scheduled payment date on February 16. *Id*. at ¶ 11, Exhibit A. The determination was based on the campaign's failure to meet the matchable contribution threshold. *Id*. Based on CFB staff's review of the January 15 filing, the campaign had raised $4,420 toward threshold, short of the $5,000 minimum. *Id*.

On March 5, 2021, CFB staff sent Monserrate a letter stating that he was ineligible to receive public funds due to his legal ineligibility to be elected to city office, pursuant to Local Law 15 of 2021 (codified at N.Y.C. Charter, § 1139), which was enacted on February 25, 2021.  *Id.* at ¶ 12.

On April 8, 2021, the *Shabazz* action was filed.  On April 12, 2021, plaintiff moved to intervene in *Shabazz*, asserting essentially the same claims he asserts here.  On April 14, 2021, the Board determined that plaintiff was ineligible to hold Local Office pursuant to LL15 and disqualified him as a candidate.  On April 16, 2021, plaintiff filed a special proceeding, purportedly under Article 16 of the Election Law, seeking essentially the same relief sought here, also pursuant to 42 U.S.C. § 1983 (the "State Court Proceeding").  By order dated April 23, 2021, Justice Timothy Dufficy, Supreme Court, State of New York, Queens County, dismissed the State Court Proceeding, holding that a special proceeding under Article 16 of the Election Law was not the proper vehicle for seeking relief under 42 U.S.C. § 1983, that plaintiff failed to provide notice to the City that he was challenging the constitutionality of LL15, and even had he properly commenced the proceeding, he was ineligible to hold Local Office and he failed to support his claim that LL15 was invalid.  *Monserrate v. Espinal*, Supreme Court, Queens Cty., Index No. 708837/2021 (Dkt. No. 19).  On May 3, 2021, plaintiff took an appeal of Justice Dufficy's order to the Appellate Division, Second Department.  This action ensued.

## ARGUMENT

Plaintiff seeks a preliminary injunction against the Defendants directing that the BOE restore his name to the ballot and that CFB disburse matching funds to him. "[A] preliminary injunction is an extraordinary remedy that should not be granted as a routine matter." *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 80 (2nd Cir.1990). By asking the Court to compel government action by directing the BOE to restore plaintiff's name to the ballot and have CFB grant Hiram 21[3] matching funds, the plaintiffs are seeking mandatory injunctive relief, as defined by the Second Circuit. "A mandatory injunction, in contrast [to a prohibitory injunction] is said to alter the status quo by *commanding some positive act* . . ." A prohibitory injunction, in contrast, seeks to maintain the status quo pending a trial on the merits. *Mastrovincenzo v. The City of New York*, 435 F.3d. 78, 90 (2nd Cir. 2006).

A party seeking a preliminary injunction must ordinarily establish that: (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). A party moving for a mandatory injunction – one that alters the *status quo* by commanding some positive act, must meet a higher standard than a party seeking a prohibitory injunction. *Tom Doherty Assocs., Inc. v. Saban Entm't., Inc.*, 60 F.3d 27, 33-35 (2nd Cir. 1995). To obtain a mandatory injunction, the moving party must demonstrate "a greater likelihood of success on the merits," or that it will suffer extreme or very serious damage if denied preliminary relief. *Mastrovincenzo*, 435 F. 2d at 89 (citing *Tom Doherty Assocs.*, 60 F. 3d at 34); *Jolly v. Coughlin*, 76 F.3d 468, 473 (2nd Cir. 1996);

---

[3] Again, plaintiff actually seeks to have the CFB grant him matching funds but, as noted above, only a candidate's principal campaign committee may receive matching funds.

*Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2nd Cir. 1985).  Plaintiffs cannot meet the extraordinarily high standard for the issuance of such an injunction.

A heightened "substantial likelihood" standard may also be required when the requested injunction: (1) would provide the plaintiff with "all the relief that is sought" and (2) could not be undone by a judgment favorable to defendants on the merits at trial. *Mastrovincenzo*, 435 F.3d at 90.  *See also No Spray Coalition, Inc. v. City of New York*, 252 F 3d 148, 150 (2nd Cir. 2001).

The heightened standard has been applied in ballot access cases.  *Rockefeller v. Powers*, 74 F. 3d 1367, 1376-77 (2d Cir. 1995); *Ulrich v. Umane*, 383 F. Supp. 2d 405, 409 (E.D.N.Y. 2005).  As the relief sought by plaintiff would alter the *status quo* and afford him essentially all the relief sought in the complaint, the heightened standard applies and the application should be denied.

In order to prove a violation of § 1983, plaintiff must prove, *inter alia*, that "the conduct complained of . . . deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States."  *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir.1994). As set forth more fully below, plaintiff has failed to sufficiently allege and support a claim that the City unconstitutionally enacted LL15 thus depriving plaintiff of the right to run for Local Office and access to matching funds.

## POINT I

### PLAINTIFF'S CLAIM FOR INTERIM INJUNCTIVE RELIEF IS BARRED BY THE DOCTRINE OF LACHES.

The Supreme Court has long acknowledged that the timing in cases involving upcoming elections is an important consideration in determining the propriety of preliminary injunctive relief. *See Purcell v. Gonzalez*, 549 U.S. 1 (2006); *Reynolds v. Sims*, 377 U.S. 533, 585 ("[U]nder certain circumstances, such as where an impending election is imminent and a State's election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately effective relief. . . ."). Thus, when a plaintiff fails to move promptly in seeking injunctive relief, there is an increased probability that a court order may have a disruptive effect on the local government.

The Supreme Court reaffirmed this proposition in *Purcell v. Gonzalez*:

> Faced with an application to enjoin [an election procedure] just weeks before an election, the Court of Appeals was required to weigh, *in addition to* the harms attendant upon issuance or nonissuance of an injunction, considerations specific to election cases and its own institutional procedures. Court orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase.

*Id*. at 7 (emphasis added). An awareness of the highly time-sensitive nature of elections and the process leading up to them is appropriate and necessary to preserve comity between the states and the federal government. *See Page v. Bartels*, 248 F.3d 175, 195-96 (3d Cir. 2001) ("Federal court intervention that would create such a disruption in the state electoral process is not to be taken lightly. This important equitable consideration [goes] to the heart of our notions of federalism. . . .").

In this case, plaintiff commenced this action and moved for a preliminary injunction on or about April 29th, more than two months after LL15 was enacted, nearly two months after the CFB notified both Monserrate and Hiram 21 that the campaign was ineligible for matching funds pursuant to LL15, six weeks after plaintiff claims that the CFB should have first disbursed matching funds to Hiram 21, and more than two weeks after plaintiff first moved to intervene in *Shabazz* and assert these same claims. Plaintiff has offered no reason for this delay.[4]

This case is consistent with other cases analyzing the timing of requests for preliminary injunctive relief in the context of fast approaching elections, and concluding that laches is appropriate to bar the preliminary relief sought. *See e.g.*, *Miller v. Board of Commissioners of Miller County*, 45 F. Supp.2d 1369, 1373-75 (M.D. Ga. 1998) (motion for preliminary injunctive relief filed about two weeks prior to challenged primary election; relief "barred under the doctrine of laches"); *McNeil v. Springfield, Park District*, 656 F. Supp. 1200, 1202-03 (C.D. Ill. 1987) (injunction sought three weeks prior to election constitutes "inexcusable delay"); *Knox v. Milwaukee Board of Election Commissioners*, 581 F. Supp. 399 (E.D. Wis. 1984) (attempt to enjoin primary denied under doctrine of laches when suit filed several weeks before election).

---

[4] On April 16, 2021, after withdrawing his motion to intervene in *Shabazz*, Monserrate filed a proceeding in Supreme Court, Queens County, under Article 16 of the Election Law seeking to overturn the NYCBOE's determination that he was ineligible for designation as a candidate in the June 2021 Democratic Party Primary Election for Council Member. *See Monserrate v. Espinal, et al.*, Supreme Court, Queens County, Index No. 708837/2021. Monserrate asserted essentially the same claims and the same relief there.

Here, as set forth above, plaintiff knew that LL15 rendered him ineligible to hold Local Office not later than March 5, 2021, when CFB advised him of it. While not certain, it is clear that plaintiff knew of movement within the City Council to pass what became LL15 in January 19, 2021, when he claims he was contacted by a member of the City Council and informed of movement of the bill. Affidavit of Hiram Monserrate, ¶ 16 (Dkt. No. 1-1). Nonetheless, he failed to commence this action until more than three months later and more than two months after LL15 became law. Plaintiff's affirmative decision to delay seeking redress of his claims by failing to timely challenge LL15 and then waiting more than an additional two weeks after initially moving to intervene in a related matter to commence this action warrants a finding that his claims are barred by the doctrine of laches.

## POINT II

### PLAINTIFF HAS NO LIKELIHOOD OF SUCCESS ON THE MERITS

**A.  Monserrate/Hiram 21 Failed to Qualify for the Disbursement of Matching Funds on any Matching Funds Disbursement Date.**

Plaintiff asserts, without any factual support, that the CFB wrongly refused to disburse matching funds to Hiram 21 on February 16, 2021.  Plaintiff does not dispute that the CFB's determination of that date was correct.  Rather, he claims that he cured any deficiencies by filing amended and supplemental disclosures with CFB thereby rendering Hiram 21 eligible for matching funds.  What plaintiff ignores is that the Program provides that matching funds are disbursed only on specific dates and those disbursements are based upon filings submitted during a prescribed period.  Here, but for the enactment of LL15, Hiram 21 would have been eligible for a disbursement on March 15 based upon the amended and supplemental filings.  Amended and supplemental filings do not give rise to a claim for retroactive and immediate disbursements and he makes no claim to the contrary.

**B.  Local Law 15 is a Valid Exercise of Municipal Authority and Because It was Enacted Prior to Monserrate Seeking Placement on the Ballot as a Candidate for Council Member, It Did Not Deprive Monserrate of any Rights.**

Relying on *Poindexter v. Strach*, 324 F. Supp. 3d 625, 632 (E.D.N.C. 2018), plaintiff alleges that LL15 is unconstitutional here because it was enacted during an election cycle and served to disqualify him after he had qualified for placement on the ballot.  Plaintiff fails to recognize and acknowledge that he had not qualified for placement on the ballot when LL15 was enacted.  Rather, the period within which to collect signatures on a designating petition had yet to begin.  *See* Chapter 22, N.Y. Laws of 2021.

In *Poindexter*, three candidates who participated but lost party primary elections were properly nominated and approved for placement on the ballot as candidates in the general election for the same offices they had sought, but failed to obtain, a different party's nomination at the primary election. Thereafter, North Carolina adopted a "sore loser" law that served to disqualify candidates from being nominated by a new political party whose name had appeared on a primary election ballot for the same office in the same year. Thus, North Carolina only acted to disqualify candidates *after* they had been approved for placement on the ballot. That is, after they had obtained an actual, rather than a potential, interest in the ballot. Similarly, in *Yang*, the state of New York altered its electoral scheme after candidates in the Presidential Primary and their delegates had already qualified for the ballot such that the Commissioners of the State Board of Elections were granted the authority to disqualify them after having qualified for placement on the ballot. At least two candidates – Yang and Sanders – stated that notwithstanding having suspended their campaigns, they desired to remain on the ballot in an effort to gain delegates to the Democratic National Convention in order to have greater influence in shaping the party platform. The Second Circuit held that because the candidates and delegates had already obtained placement on the ballot, and when the candidates had suspended their respective campaigns, the law at the time continued them as candidates in the primary election, they had demonstrated a substantial likelihood of success on the merits because they had already obtained an interest in appearing on the ballot when the law was changed.

The fact patterns in both *Yang* and *Strach* are easily distinguished from the facts here. As set forth above, plaintiff had not even begun collecting signatures to qualify for placement on the ballot and had not qualified to receive matching funds when LL15 was enacted whereas the plaintiffs in *Yang* and *Strach* had not only collected signatures, but had actually

qualified and been placed on the ballot when laws were enacted to disqualify them as candidates and remove their names from the ballot. Because plaintiff had not qualified for the ballot when LL15 was enacted, he did not have an actual interest in the ballot or any matching funds and therefore his rights could not have been – and were not – violated.

### C.    There is No Due Process or First Amendment Violation Where there are Adequate State Court Remedies Available.

Plaintiff contends that his rights under the Due Process Clause and the First Amendment were violated due to the enactment of LL15 and subsequent denial of matching funds to Hiram 21. Again, plaintiff is wrong.

Plaintiff's Due Process, Equal Protection, and as-applied First Amendment claims are barred by the Second Circuit's decision in *Rivera-Powell v. N.Y.C. Bd. of Elec.*, 470 F.3d 458 (2006). *Rivera-Powell* stands for two separate propositions here that mandate dismissal of his claims. First, with regard to his First Amendment Claim, the Second Circuit held that:

> [w]hen, as here, a plaintiff challenges a Board of Election[s] decision not as stemming from a constitutionally or statutorily invalid law or regulation, but rather as contravening a law or regulation whose validity the plaintiff does not contest, there is no independent burden on First Amendment rights when the state provides adequate procedures by which to remedy the alleged illegality.

*Id.* at 469. To the extent that the plaintiff asserts an as applied challenge – rather than a facial challenge – to LL15, *Rivera-Powell* mandates it be dismissed. Accordingly, plaintiff's as-applied First Amendment claim fails as a matter of law. Additionally, as set forth more fully above and below, LL15 is facially constitutional. Second, in order to prevail on his Equal Protection claim, plaintiff "would have to show that the Board intentionally discriminated

against [him], either by adopting out of [protected status] animus policies which are facially neutral but have a [protected status] discriminatory effect, or by applying a facially neutral policy in a [protected status] discriminatory manner." *Id*. at 470. Here, plaintiff quibbles with the City's conclusions as to which offenses should serve to disqualify a felon from holding Local Office. Read consistently, plaintiff's arguments would mandate that the City expand the group of felons disqualified from holding Local Office for LL15 to be valid. Such would be an absurd result and finds no support in case law. Thus, his Equal Protection claim must also fail.

In addition to the foregoing, to the extent that plaintiff contends that he was "targeted" by LL15, he has offered no admissible evidence to support this claim. Rather, on this point his affidavit is replete with inadmissible hearsay and therefore must be disregarded.

## POINT III

### THE EQUITIES WEIGH AGAINST THE GRANTING OF PLAINTIFF'S MOTION.

In addition to the reasons set forth above why the instant motion should be denied on the grounds of laches, the remaining equitable considerations weigh against the granting of the relief sought herein. First, plaintiff has yet to exhaust his rights in state court which he is pursuing simultaneously. Second, the Election Law addresses concerns about candidates being restored to the ballot once mailed ballots (absentee, special, and military) are prepared and finalized. Election Law § 7-122(a) provides that absentee ballots shall be "as nearly as practicable, in the same form as those to be voted in the district on election day." Election Law, § 7-122(a). If plaintiff is successful in state court, his name would appear on the vast majority of ballots to be used at the Primary Election as contemplated by the Election Law. This is not unusual and, in any event, any delay in resolving plaintiff's claim lies solely with plaintiff for not

commencing this proceeding at an earlier date. Such delay would result in the Board having to expend additional resources to alter the ballot to add plaintiff's name only days before such ballots are required to be mailed. Election Law, § 10-108.

## POINT IV

**PLAINTIFF SHOULD BE REQUIRED TO POST A BOND IN AN AMOUNT EQUAL TO ANY MATCHING FUNDS ORDERED TO BE DISBURSED.**

Rule 65(c) of the Federal Rules of Civil Procedure requires that no temporary restraining order or a preliminary injunction shall issue unless the applicant for such an order posts security in an amount sufficient to pay the costs and damages that a wrongfully restrained or enjoined party may suffer. Fed. R. Civ. P. Rule 65(c). Here, plaintiff's application for a preliminary injunction seeks (in essence) an order compelling the CFB to disburse matching funds to Hiram 21. If such funds were to be disbursed, there is virtually no means by which the CFB could recover them. It was not until Monserrate/Hiram 21 sought matching funds for the Primary Election – when all outstanding obligations to the CFB had to be satisfied to be eligible for matching funds for the current election did Monserrate pay his fines relating to prior elections. Because Monserrate will be ineligible for matching funds in the future due to his disqualification for holding an office for which CFB matching funds would be available absent a pardon, and Hiram 21 will likely be insolvent, there would be no meaningful avenue for the CFB to recover any matching funds disbursed pursuant to a preliminary injunction.[5]

---

[5] It was not until plaintiff was preparing to seek matching funds this year that he satisfied his outstanding fines/debts to the CFB relating to a prior election. Because matching funds are only available for contests for Local Office, and plaintiff is barred from holding Local Office, he will have no incentive in the future to satisfy any outstanding fines/debts relating to the disbursement he seeks here.

The requirement that security be posted prior to the issuance of interim injunctive relief is a restriction on federal courts in their exercise of their general equitable powers. *Halpert v. Engine Air Service, Inc.*, 212 F.2d 860, 863 (2nd Cir. 1954) *cert granted* 348 U.S. 854, *writ of certiorari dismissed* 350 U.S. 801.  Rule 65(c)'s requirement that security be posted prior to the issuance of interim injunctive relief is to make the party against whom the injunction issued whole for costs and damages occasioned by the wrongful issuance of such injunction. *Bass v Richardson*, 338 F Supp 478 (S.D.N.Y. 1971).

For the reasons set forth above, the CFB respectfully requests pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, that in the event that the Court is inclined to enter an order granting plaintiffs the interim injunctive relief that they seek, the Court condition such relief on the giving of security in an amount equal to the matching funds ordered to be disbursed to Hiram 21 pursuant to a preliminary injunction together with an amount equal to the CFB's costs incurred in reviewing the Hiram 21 filings to determine the amount of such disbursement.

## **CONCLUSION**

For the reasons set forth above, defendants Board of Elections in the City of New York, the New York City Campaign Finance Board, and the City of New York respectfully request that this Court enter an order denying plaintiffs' motion for a preliminary injunction and for such other relief as is just and proper.

Dated:     New York, New York
           May 4, 2021

**JAMES E. JOHNSON**
Corporation Counsel of the
   City of New York
Attorney for Defendants
100 Church Street, Room 2-126
New York, New York  10007
(212) 356-2087
e-mail: SKitzing@law.nyc.gov

By:     s/Stephen Kitzinger
        Stephen Kitzinger
        Assistant Corporation Counsel